### FRANK P. CHAPIN V. ARLINGTON U. BETTS.

RECOVERY OF PREMIUM PAID BY AGENT WITHOUT REQUEST OF APPLICANT.

Where an agent of a life insurance company secures the application of a person for insurance and such agent without the request or authority of the applicant forwards to the company the amount of the first annual premium, and the applicant before the policy was issued by the company recalled his application; but regardless of this, the policy was afterwards delivered to the applicant and an action instituted by the agent in his own name to recover the amount of the premium paid by him: *Held*, that the agent could not maintain the action, there being nothing in the pleadings or testimony tending to show that the agent stood in a position where he might maintain an action for this premium as the assignee or successor in interest of the insurance company. Such action could only be maintained by the company or one who has received the claim of the company by assignment or otherwise.

PARKER, J.

This action was brought in the court of common pleas on what is alleged to be a contract between the plaintiff and the defendant. At the close of the testimony, on motion of defendant, the court directed the jury to return a verdict for the defendant, which was done. Motion for a new trial was made alleging this action of the court as error, which motion was overruled. On account of this action of the court—in directing a verdict and overruling said motion—error is prosecuted in this court by the plaintiff.

Chapin v. Betts.

The pleadings are brief, and the statement of plaintiff's case can probably be most clearly given by reading from the petition:

" The plaintiff says that on the 18th day of September, 1894, he was the managing agent of The Equitable Life Assurance Society of New York, in the city of Toledo, and was known by the defendant to be such; that on said last mentioned date the defendant, by a certain contract in writing entered into between defendant and the plaintiff, engaged and employed said plaintiff to secure for said defendant a certain policy of insurance upon the life of said defendant in the sum of six thousand, seven hundred and ninety-eight dollars ($6,798) on the installment plan for twenty years with a twenty year tontine period.

"It was further agreed in said contract that said defendant should be liable only for the amount of the annual premiums on said policy, which it was agreed between said parties should be the sum of one hundred and forty-three dollars ($143) per year and that the same should be paid by defendant to plaintiff upon the delivery of said policy on or before the 15th day of October, 1894. A copy of said contract is hereto attached marked Exhibit " A. "

"The plaintiff says that he has duly performed all the conditions of said contract on his part to be performed, and secured a policy from said company complying in all respects with the terms of said agreement, and that on the 13th day of October, 1894, he delivered the same to the defendant; that this plaintiff has duly paid to said Life Assurance Society the amount of the premium due from him as such agent on said policy, but that the defendant has not paid to this plaintiff, or to any one for him, the said sum of $143 so agreed to be paid upon the delivery of said policy, although often requested so to do.

"Wherefore, the plaintiff prays judgment against said defendant for the sum of $143 with interest thereon from the 15th day of October, 1894."

It will be observed that this action is brought upon an instrument in writing, a copy of which is attached to the petition, to recover the sum of $143, the first installment of the annual premiums to be paid upon the policy set forth in the petition. Plaintiff alleges that this is a contract between himself and the defendant, and that the defendant employed him to obtain this policy and agreed to pay to him this sum of $143 as compensation for his services in procuring a policy for the defendant. These allegations of the petition are denied in the answer of the defendant. There is an issue made as to whether or not the policy which was proffered in pursuance of this arrangement between the parties was in fact of the form and character agreed upon; but it is not necessary to pay any attention to that issue here.

I proceed now to read Exhibit " A "; that which the plaintiff avers is a contract between him and defendant upon which he brings this suit:

" TOLEDO, OHIO, September 18, 1894.

FRANK P. CHAPIN, Esq., Manager Equitable Life Assurance Society, Northwestern Ohio Department, Toledo Ohio.

"You are hereby authorized to transmit my application to The Equitable Life Assurance Society of New York, this day made by me for a policy of life assurance, together with the medical examination which I agree to have taken by Dr. Thorne on or before the 20th day of September, 1894, for a policy in the sum of $6,798 on the installment plan for twenty years with a twenty year tontine period.

"It is distinctly understood and agreed that if the medical examination should be unsatisfactory to the company or for any reason whatever the application should be rejected, I am to be at no expense whatever for medical examination or otherwise, and if the application is accepted, I shall be liable only for the amount of the annual premium amounting to $143 per year, payable according to the terms of said application, the first payment to be made on or before October 15th, when policy may be delivered.

"(Signed) ARLINGTON U. BETTS & Co."

"Attest: F. P. CHAPIN."

The signature of the plaintiff does not appear, excepting under the word, "attest" where he appears to sign attesting the signature of "Arlington Betts & Co." Upon the trial of the case the alleged contract itself was introduced in evidence, and in addition to what I have read, this appears on the margin: "Free Tontine (or Tontine Installment) Application—continued. See other sheet." It appeared upon trial of the case, that at the time this application was signed by defendant, another blank was made out and signed by him and upon the margin of the blank (which is Exhibit No. 9 attached to plaintiff's petition), appears this: "Free Tontine (or Tontine Installment) Application—continued. See other side." This blank gives the name of the party to be insured, and the name of the person making application for the insurance to be insured (both the same party in this case,) his residence, business, age and various statements such as are usually made by persons applying for life insurance, and then this appears: "I have noted the 'privileges and conditions' printed on the other side of this sheet, and hereby apply for a policy embodying the same, and I hereby agree that this application, and the policy hereby applied for taken together, shall constitute the entire contract between the parties hereto; that all the foregoing statements and answers are warranted to be true; that this contract shall not take effect until the first premium shall have been paid during my good health." In the blank there is provision made for payment of premium upon the policy at the time the application is made, or at some time before the policy is delivered; in which event the right of the applicant for insurance—if the policy shall be issued to him —appears to differ somewhat from his rights under the policy where he does not advance the payment. It is the 12th paragraph, and reads:

"What premium has been paid to make the assurance under this application binding from this date provided the risk is assumed by the Society? A. Annual premium of ——$—— has been paid upon condition that if the risk is not assumed by the Society, this sum is to be returned in accordance with the provisions of the conditional receipt No. —— given for said premium."

This part of the blank, in this instance, was not filled out. Mr. Chapin signed this blank as manager of the company, under the words: "This risk is approved and recommended by F. P. Chapin." He recommends and approves and fills in the blank with his own name as the person who does so approve, and then signs below as manager.

Within a week after this application was signed by Betts, he notified Chapin that upon further investigation he had concluded to not take the policy. This was before the policy had been issued, or at least before it had been tendered to Betts, or he had been notified that it would be issued.

Now our view of these papers, taken together—and they clearly should be taken and read together—is, that they constitute an application to the Assurance Society, for the issuing to the applicant of a policy of the character described in the application—or Exhibit "A"—alone, or the two together—but do not constitute a contract between the plaintiff and the defendant; that it is a mere authority to the plaintiff, as the managing agent of the Society, to procure for the applicant—the defendant—an insurance policy, and an agreement that if he procure and deliver to him the policy he will accept it and pay the first annual premium. The signature—Arlington U. Betts & Co—was treated upon the trial, and has been treated in argument before us as the signature of an individual, namely the defendant, Arlington U. Betts, so we shall treat it in the same way, and therefore we say that this is an agreement between the defendant and the Assurance Society and not between the defendant and the plaintiff. There is nothing in it to indicate an employment of the plaintiff by the defendant as the agent of the defendant, to procure this insurance for the defendant: it is a mere authority and direction to him as a representative of the society.

Further; if it could be construed to be an employment of Chapin, there is no promise to pay Chapin for his services in procuring a policy, this sum of $143. This is a payment to be made to the Assurance Society; or if to Chapin, then to Chapin as the agent of the Assurance Society, of the first annual premium upon the policy. If Chapin was, in this transaction, the agent of both Betts and the society—a position which seems to us to be quite inconsistent, in view of the fact that he is entrusted as the confidential agent of the society with the duty of approving or disapproving this application and this risk—his action would be for a *quantum meruit* upon an implied and undertaking on the part of Betts to compensate him for services thus requested and performed—it would not be an action for this $143 to be paid as the first premium upon this policy. We hold that this action to recover the $143 premium cannot be maintained by any other than the society or one who has received the claim of the society by assignment or otherwise so as to become possessed of the right of the society to recover the premium; and it is not contended, and there is nothing in the pleadings or the testimony tending to show that the plaintiff stands in a position where he may maintain an action for this premium as the assignee or successor in interest of the society. There is no privity of contract here between plaintiff and defendant growing out of the fact that the plaintiff is to receive for his services as agent of the society a share of these premiums—a percentage, or an amount based upon the amount of premium to be paid by the defendant to the society—no such privity as would authorize him to maintain an action for the premium, or any part of it. If this action could be maintained by the plaintiff for the premium, then the claim in his hands would be subject to the same infirmites and defenses as if the suit were brought by the society. In that case it must be made to appear that the policy was issued and delivered before the application was cancelled or revoked. It appears very clear from the bill of exceptions, from the testimony and the letters attached, that within a week after this application was made—before the policy had been issued by the company—at least before the policy had been sent forward to be delivered to Mr. Betts, by clear, distinct and unequivocal words, he undertook to recall his application, and we think that since the contract was in no way binding upon the Insurance Society at that time—since

it was not bound at that time to issue its policy, that it was within the power of Betts to recall or revoke this application. So we say, even if the suit had been instituted by the Assurance Society, or by one standing in the shoes of the Assurance Society, for the first annual premium to be paid upon this policy, it could not have prevailed. It appears that after this attempt to recall this application—this declaration of his purpose to recall the application on the part of Betts—Chapin, as agent of the society, went to the office of the defendant, Betts, and delivered into his possession a policy. The circumstances under which that delivery was made were such as to raise grave doubts as to whether the defendant, Betts, accepted of the delivery; it seems to have been thrown down upon his table and left. There is perhaps enough in that so that if a suit had been instituted by the society, or by Chapin as the assignee of the claim of the society, there would have been sufficient to leave to a jury the question whether or not the insurance policy was accepted, whereby Betts became bound to pay the premium. This suit was brought by one not standing in the shoes of the society; was brought distinctly by the plaintiff upon his alleged claim for compensation, as the agent or one who had performed services for the defendant. We think the court was right in taking the case from the jury; that this issue need not to have been and should not have been submitted to the jury.

It will be seen that this is not a suit for money paid by Chapin for the use of Betts at his request or upon his authority. It is alleged in the petition that Chapin had paid to the Insurance company this $143, first premium; which should have been paid by Betts, but looking into the bill of exceptions and the testimony of the plaintiff upon that subject, we find that he distinctly states that he was not requested nor authorized by Betts to send forward or pay this $143 for him. He says it was paid to the company on the 1st day of November, 1894, some time after the defendant had unequivocally and distinctly asserted that he would not accept the insurance and had sent back the policy to Mr. Chapin the second time.

This, I believe, covers all the points presented by this record or that have been suggested by the argument of counsel, and the conclusion to which we have arrived is that there was no error in the action of the court in directing a verdict to be returned for the defendant and in overruling the motion for a new trial. Judgment will be entered accordingly, affirming the judgment below.

*Messrs. Doyle, Scott & Lewis*, Attorney for Plaintiff.

*E. W. Tolerton, Esq.*, Attorney for Defendant.